IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUDY HAGAR,[1]

        Plaintiff,

v.                                                        CIV 02-1258 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

      Plaintiff Gloria Judy Hagar attended school until eighth grade education and much later received her GED. She worked in an electronics company from 1975 to 1982 and as a sales clerk from 1984 to until 1991. She quit the sales clerk/cashier position at age forty-six either due to difficulty standing and problems with her memory or because the company went out of business. In 1993, Hagar was involved in a car accident where she suffered head and neck injuries. She worked briefly as a substitute school janitor in April and May of 1995. *See e.g., Administrative Record* ("*Record*") at 44, 47, 48-49, 53, 74, 79, 93, 115, 209.

      She applied for disability benefits on October 15, 1997 alleging that she became unable to work on May 30, 1995 due primarily to problems with her feet that began in 1975, but she also noted her prior surgeries and gastrointestinal problems. *See id.* at 79, 89. Later, she confined her

---

    [1] Throughout the vast majority of the Administrative Record, Plaintiff's last name is spelled "Hag**e**r." Throughout this court's record, the parties spell her name as "Hag**a**r." To avoid confusion, I use the spelling that appears in the caption to this suit.

application to Title II benefits and amended her onset date to August 1, 1995, or the date she turned fifty years old. In addition, the records indicate March 31, 1997 as the last date of her insured status. Therefore, Hagar must establish that she was disabled between August 1, 1995 and March 31, 1997. *See id.* at 129, 44, 46, 62.

Administrative Law Judge ("ALJ") John J. Wren found that Plaintiff has the residual functional capacity to perform light work and could therefore engage in her past relevant work as a sales clerk/cashier. As such, he found her not disabled at Step 4 of the sequential analysis, and did not consider application of the Medical-Vocational Rules or "grids." Nor did he call upon a vocational expert to testify. *See id.* at 34. The Appeals Council declined review on December 18, 2000, thereby rendering the ALJ's decision final, and subsequently granted an extension in which to file the instant action. *See id.* at 6, 19-20.

This matter is before the Court on Plaintiff's Motion to Reverse or Remand, where she asserts that the ALJ committed three errors. *See Docs. 8, 9.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. The entire record has been thoroughly read and carefully considered. I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed.

## I. Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d

799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II. Analysis

### *A. Credibility Finding Is Supported By Substantial Evidence*

Plaintiff asserts that certain of the ALJ's credibility findings with regard to Hagar's daily activities, asserted mental impairments, and complaints of pain are not supported by substantial evidence. Yet, the ALJ set forth the proper legal standard for his credibility analysis and went on to discuss a number of factors in detail. In considering Plaintiff's daily activities, he began his analysis by reasoning:

> The claimant stated that she was unable to perform activities as minimal as buttoning her clothes, picking up a pencil or climbing a flight of stairs. The claimant testified that after 15 to 20 minutes of standing, that she had to elevate her feet for 45 minutes. However, her testimony and the statements in her reports are inconsistent with such a minimal level of physical activity. In the claimant's Disability Report, she indicated that she ***could cook, drive and wash clothes*** (Ex. 1E). The claimant complained of foot pain and instability, but she does not require the use of assistive devices for ambulation. There is also no evidence that a recognized physician has informed her to significantly diminish her daily living activities. The claimant appears to have decreased her performance [of] her daily living activities based upon her subjective complaints ***rather than upon the advice of a physician.*** The claimant's ability to perform daily living activities is within a functional range and suggests that her symptoms are not as disabling as alleged.

*Record* at 31 (emphasis added).

Plaintiff takes issue with the ALJ's characterization that Hagar "can" drive, cook and wash clothes as a misstatement of what she reported. I disagree that the characterization is a misstatement. Plaintiff reported that she "occasionally" drives, "seldom" cooks, and "occasionally" does laundry. Plaintiff thus indicated that she is "able" to do those things on that report as well as in her testimony,[2] although she does so infrequently.

The ALJ concluded that no physician advised her to curtail her activities to a minimum. Plaintiff also faults this observation as a basis for questioning her credibility, arguing that because she performs "virtually no activities . . . there would be no reason for a doctor to suggest she reduce activity." *Doc. 9* at 8. Nevertheless, the ALJ's observation accurately reflections the medical records. None of Hagar's health care providers noted or encouraged her to limit her activities. Indeed, her podiatrist repeatedly encouraged Plaintiff to wear proper shoes and to use her prescribed orthodontics and ankle support. *See Record* at 147-49, 151, 156, 158. As the ALJ later noted in his analysis, "there was no evidence from any physician that the claimant had any significant functional limitations. The lack of a physician's opinion to support the claimant's allegations of disability suggest that the claimant's alleged impairments are not disabling and detracts from the claimant's credibility." *Id.* at 32.

As for Plaintiff's asserted mental impairments, the ALJ observed:

> The claimant also complained of a disabling mental impairment,
> [but] her statements are inconsistent with the evidence. In
> claimant's <u>Daily Activities Questionnaire</u>, she stated that she was
> unable to make decisions and was unable to concentrate (Exh. 3E).
> However, Dr. Sutton indicated that the claimant could did not [sic]
> require intensive psychiatric treatment or special supervision, could

---

[2] *See Record* at 52, 55 (she can drive a car for five miles and cook things she can pour out of a box); *id.* at 209 (drove herself to appointment with examining psychologist).

>concentrate on basic work tasks, complete tasks, and could pursue simple, routine employment within any physical health limitations. The claimant also did not receive any significant treatment, therapy or counseling from a mental health professional.

*Record* at 32.

Plaintiff contends that Dr. Geoffrey Sutton, the examining psychologist, did not address he ability to make decisions although he found that Hagar has a borderline full scale IQ of 76 and mild to moderate difficulty concentrating. *Doc. 9* at 9. In fact, Dr. Sutton tested her at a full scale IQ score of 77, noted this measurement as borderline, but further suggested that Plaintiff has "perhaps somewhat higher level of actual adaptive functioning given her reasonable answers to MSE question and her work history." *Record* at 212. In context, his comment about concentration was as follows: "She may be expected to have mild to moderate difficulty concentrating ***at times but not consistently as she can do well when focused on demand*** as at this testing." *Id*. (emphasis added). Dr Sutton further was of the opinion that: Plaintiff's "memory is adequate for most instructions and so is her understanding;" her "social skills are adequate;" she "does not require intensive psychiatric treatment;" she can "[p]ursue simple, routine employment within any physical health limitations;" she "does and can handle funds;" she "can plan and execute a basic work sequence and does not require special supervision;" and she "can concentrate on basic work tasks and complete tasks." *Id.*

As for complaints of foot pain, Hagar argues that the ALJ failed to take note of her prescribed ankle wraps when stating that Plaintiff does not require an assistive device to walk. *Doc. 9* at 9; *see also Record* at 99 (Plaintiff indicated she does not use an assistive device to walk). In his discussion of the medical evidence, however, the ALJ did in fact note that when

Plaintiff "complained of increased pain and swelling in her right foot ankle," although the "x-rays were normal," she "was advised to keep her ankle tapes and was provided with an ankle splint." *Record* at 30.  He also noted that she was wearing her ankle brace during the hearing.  *Id.* at 50.

Although Plaintiff does not challenge the ALJ's finding about her allegations of problems with her hands, I note that the ALJ concluded "the evidence does not indicate that she had any significant problems which would prevent her from handling and manipulating items."  *Id.* at 32.  Moreover, Dr. Sutton noted that Plaintiff "writes checks to pay bills each week."  *Id.* at 209.

Finally, Plaintiff receives ongoing treatment of her feet by a podiatrist and argues that despite this treatment, the ALJ improperly discredited her complaints about her feet "by inferring that if her treatment were not effective, she would have complained and sought other treatment." *Doc. 9* at 9 (citing *Record* at 32).  Although the ALJ's decision could have been clearer on this point, in context there are two ways to interpret the above comment, neither of which undermine his credibility finding.

First, ALJ Wren's comment about seeking alternative treatment likely relates to Plaintiff's gastrointestinal complaints and mood disorder, and not her foot pain, because the ALJ's comment appeared in his discussion about Plaintiff's medications.  The only medications Plaintiff listed in her submissions, other than for transitory infections (Kelex), are hormone replacement drugs (Premarin), antidepressant/antianxiety drugs (Zoloft, Librex, Altrazolam, Xanax), for gastrointestinal problems (Prilosec), and Tylenol.  *See Record* at 101, 110-11, 114.  The ALJ reasoned:

> The claimant stated that she was taking numerous medications.  A reasonable inference could be made that if the claimant's medication was ineffective or caused adverse affects, then she

>would have complained to her physicians or requested different medication. There is no indication that the claimant's medication has caused any adverse affects. The claimant's failure to complain about her medication tends to suggest that her medication is effective or that her symptoms are not as debilitating as she alleged.
>
>If the claimant were truly experiencing disabling symptoms and her symptoms were not resolved by her medication and treatment then it would be reasonable to believe that she would have sought other forms of treatment. The evidence indicates that the claimant underwent therapy for at least two years which adds to her credibility. However, the records indicate that her condition was improved with medication and therapy, but the claimant appears to have stopped receiving therapy. ***If the claimant were truly experiencing disabling pain, then she would have sought other forms of treatment which were somewhat more aggressive.***

*Record* at 32-33 (emphasis added).

Even assuming the above reasoning discussion relates to Plaintiff's foot problems, it must be considered in the context Plaintiff's allegations and the ALJ's discussion of the medical evidence. Hagar testified that she had constant pain, swelling, and numbness in her feet that resulted in a loss of balance and required her to elevate them every thirty to sixty minutes. She claimed she cannot tolerate standing, walking, or sitting for more than fifty minutes at a time, can only drive a car for five miles at a time, can only walk half a block, cannot walk up stairs, cannot wear shoes, and cannot shower without someone else in the house for fear she will lose her balance. *See Record* at 49-52, 57, 99-100, 105.

ALJ Wren considered "possible nerve entrapment of the feet" as a "severe" condition at Step 2. He then discussed the medical evidence and made these chronological findings regarding Plaintiff's foot problems: Hagar had "intermittent improvement in her pain symptoms with medication, orthotic supports, and the use of whirlpool therapy;" after Plaintiff was diagnosed

7

with chronic pain syndrome resulting from the auto accident, her podiatrist noted that Hagar "had good relief from her discomfort;" and later, when Plaintiff "complained of increased pain and swelling in her right foot ankle . . . x-rays were normal [and she] was advised to keep her ankle taped and was provided with an ankle splint." *Record* at 29-30.  In considering Plaintiff's allegations of the pain and need to elevate her feet, the ALJ found that the "objective medical evidence does not support" the allegations.  That is, Hagar does not "require the use of assistive devices which would most likely be prescribed for a person with an unstable gait.  The claimant has no inflammatory or degenerative joint disease.  The claimant's foot x-rays revealed no fractures or significant abnormalities." *Id.* at 32.  A review of podiatrist Shapiro's records amply supports this conclusion, conveying the distinct impression that rather than being debilitating, Plaintiff's foot problems wax and wane in terms of pain and can be managed if Plaintiff consistently follows the prescribed protocol.  *See id.* at 144-66.

      Falling, as it does, after the discussion of the objective medical evidence, citation to podiatrist Shapiro's records, and apparent reference to Plaintiff's probable use of Tylenol for her foot pain, I cannot characterize ALJ Wren's comment about not seeking other treatment as having ignored the medical evidence or Plaintiff's chronic foot condition.  *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

      For all these reasons, I find that the ALJ's credibility finding is supported by substantial evidence.  Moreover, he closely and affirmatively linked his credibility findings to that evidence.  Consequently, I defer to his credibility determination and find Plaintiff's first assertion of error without merit.  *E.g., Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

### B. *Residual Functional Capacity & Past Work*

Plaintiff first contends that ALJ Wren did not apply the three-part analysis required to determine whether a claimant can return to her past work. *See Doc. 9* at 10-13. At Step 4, the ALJ must assess a claimant's residual functional capacity, examine the demands of the claimant's past relevant work, and determine whether the claimant can perform the past relevant work given the residual functional capacity finding. *See e.g. Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996); *Henrie v. United States Dep't of Health & Human Servs,* 13 F.3d 359, 360-61 (10th Cir. 1993). ALJ Wren first found, among other things and based on his credibility determination, that Plaintiff can "sit, stand, and walk about 6 hours in an 8 hour workday." *Record* at 33.

Plaintiff did not describe what the sales/cashier job entailed in her written submissions. *See e.g., id.* at 93-95 (description of janitor position). She did describe the position briefly in her testimony upon questioning by the ALJ:

> Q: Okay, what did you do there?
> A: I was a cashier, sales clerk, cashier typ of work.
> Q: Okay, did you have, what did you have to do physically in that job?
> A: Cashier.
> Q: Did, were you able to sit or did you need to be on your feet?
> A: No, you, I had to be on my feet.
> Q: Okay. Why did you leave that job?
> A: I had too many foot surgeries and stuff. I was more surgeries and stuff on my feet.
> Q: Okay. Between the surgeries did you have trouble with the requirements of the work?
> A: yes.
> Q: What problems were you having?
> A: My memory, what I was supposed to do.
> Q: How about physically, did your feet cause you any problem on that job?
> A: Yes.

9

> Q: What problems did they cause you?
> A: Surgeries, being hurt, hurting and swelling and stuff.  I've been on them on (sic) long that they just swell and hurt and I'd have to go back to the doctor.

*Id.* at 48-49.  ALJ Wren thus did make some effort to develop the record about the demands of her past work.[3]  In any event, the ALJ concluded that Plaintiff's past relevant work was performed at a "light, semi-skilled level," *id.* at 33, and there is no dispute that this is the proper classification for a cashier.  The Dictionary of Occupational Titles § 290.477-014 describes a sales clerk position in the retail trade as light work (which involves the ability to stand or walk up to six hours in an eight-hour day), frequent handling and fingering, and a general learning ability of "3" (defined as the middle 1/3 of the population).  *See Doc. 9,* Exh. A.

Finally, ALJ Wren concluded that Hagar "can perform her past relevant work as a sales clerk."  *Id.* at 33.  Although he did not specifically state why, his reasoning is apparent from the rest of his decision.  That is, because Plaintiff can physically perform light work and did not have any mental impairments that preclude her from basic work consistent with Dr. Sutton's findings, Plaintiff could return to the light, semi-skilled work as a cashier.  Since he engaged in each step of

---

[3] *See Gibson v. Barnhart,* ___ Fed. Appx. ___ , 2003 WL 21702496 at * 3 (10th Cir. 2003) (case No. 02-6337) ("The ALJ noted with approval the portion of the vocational expert's testimony relating to 'light' jobs and concluded that those jobs 'precisely match[ed] the claimant's residual functional capacity.'. . .  He incorporated that testimony in to his findings. . . .  'There was nothing improper about this.'"); *Westbrook v. Massanari,* 26 Fed. Appx. 897, 903 (10th Cir. 2002) ("*Winfrey* . . . is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability.  Rather, its concern is with the development of a record which forms the basis of a decision capable of review. . . .  In *Henrie,* we found that there was no inquiry whatsoever regarding the demands of past relevant work, and that the prior occupation was never even mentioned in evidence."); *Flores v. Apfel,* 2000 WL 1694301 at * 3 (10th Cir. 2000) ("While the ALJ did question claimant about some of her past jobs, he did so mostly in an effort to establish her rate of pay and reasons for leaving . . . .  The ALJ erred in making this determination, however, because he did not make specific findings regarding the demands of claimant's past work and improperly relied on expert vocational testimony as the sole basis for his conclusion that claimant's impairments did not preclude the performance of her past relevant work.").

the three-part inquiry, I cannot conclude that ALJ Wren applied an incorrect legal standard.

Plaintiff also contends that ALJ Wren's finding that she has the residual function capacity for a full range of light work and could return to her past work as a sales clerk is not supported by substantial evidence and relies on: (1) the problems with her feet preclude her from standing or walking six hours a day; (2) only occasional use her hands due to swelling, numbness and pain; and (3) her borderline intellect, placing her in "Level 1." *See Doc. 9,* at 10-13. However, the ALJ properly resolved those issues in his credibility determination, above.

### *C. Grids*

Because Plaintiff bears the burden through Step 4 of the analysis and the ALJ properly found that she failed to sustain it, *e.g., Henrie,* 13 F.3d at 360, I need not address whether Plaintiff would be found disabled under the "grids" due to her age. Alternatively, for the reasons stated by Defendant, I agree that Plaintiff would not be found disabled under the grids anyway.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 8)* is DENIED, and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.